CARL TIMMERMANN, as Executor of BERTHA BATTERMAN, Deceased, Respondent, *v.* ISIDOR COHN et al., Defendants.

FRANCES GLANCKOPF, Appellant.

The determination of the validity of the title in question held to be dependent upon oral testimony; that it is not free from doubt, and that, under the circumstances, the court should not compel

the purchaser to take the title. (*Heller* v. *Cohen*, 154 N. Y. 299, followed.)

*Timmerman* v. *Cohn*, 146 App. Div. 924, reversed.

(Argued January 12, 1912; decided January 23, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 20, 1911, which affirmed an order of Special Term denying a motion by the purchaser at a foreclosure sale to be relieved from her bid upon the sale and to recover the purchase money she had paid.

*A. Stephen Aaronstamm* for appellant.

*Peter P. Huberty* for respondent.

HAIGHT, J.   The action was brought by the plaintiff to foreclose a mortgage given by one Isidor Cohn to secure a part of the purchase money of lands owned by John F. Batterman in his lifetime, which had been conveyed to him by the executors of the decedent.   Upon the sale under the foreclosure judgment the lands were bid in by Frances Glanckopf, who subsequently moved to be relieved from the sale upon the ground that the title was not marketable.   The lands in question are located in Brooklyn and are a part of the block included between Varet street on the north, Ewen street (now Manhattan avenue) on the east, and Cook street upon the south, for a space of sixteen feet from Ewen street, and then Broadway on the south and west, running upon an angle which makes the block virtually triangular in shape.   John F. Batterman obtained title to his parcel by referee's deed on February 7th, 1873, and his wife, Sopha Batterman, obtained title to her parcel July 28th, 1865, by deed from Thomas Taylor and wife.   Her parcel adjoined that of her husband on the east, and the lines between them coincided in description.   In 1875 or thereabouts Batterman constructed a brick three-story building upon his premises, the walls of which encroached upon the premises of his wife, forming a gore about seven feet eight

inches in length, with a base of about four feet six inches, making an area of seventeen square feet two and one-half square inches. Subsequently, and in December, 1889, Sopha Batterman conveyed to her son, William Batterman, the parcel of land owned by her following the description given in her deed, in which deed her husband, John F. Batterman, joined. John F. Batterman occupied the building constructed by him in 1875 until his death, and thereupon his executors, in May, 1906, conveyed the premises to one Isidor Cohn under a description which coincided with the brick walls of the building, and thereupon Cohn executed and delivered to them the mortgage in question, which follows the description given in the deed to him. It appears from the affidavit of the son, read upon the motion, that the walls of the building are the same as they were when originally constructed.

It appearing, as we have seen, that John F. Batterman, having encroached upon his wife's lands in constructing the brick building by inclosing upwards of seventeen square feet thereof, there is a defect in the record title to that extent. The Special Term, however, reached the conclusion that he had good title thereto by reason of adverse possession and occupancy of the gore, so called, it being included in the brick building constructed by him, thus making an open, visible occupancy of the whole of the lands included within the walls and that the walls between his lands and that of his wife were partition walls throughout the entire length of their lots. If they were in fact partition walls we should be inclined to sustain the view of the Special Term, but we are unable to find in the record evidence that sustains that conclusion. It is true that there is a brick wall to the building extending from Broadway through to the end of their respective lots and that, in the deeds both of John F. Batterman and his wife where the line between them commences at Broadway it is at the center of a partition wall and runs northeasterly therefrom "along the center of said party wall thirty-two feet eight inches; thence

northerly forty-four feet four inches, more or less, to a point distant one hundred feet southerly at right angles from Varet street and also distant thirty-four feet three inches at right angles westerly from Ewen street." But it will be observed that the party wall is followed only for thirty-two feet eight inches from Broadway. The wall as described in the conveyance to Cohn commences at the same point and runs northerly forty feet and six inches, which would be seven feet and ten inches, or as stated in the record seven feet eight inches, beyond the description given in the deed to Mrs. Batterman. Thence we find the line of the wall turns northwesterly nearly at right angles a distance of four feet six inches and thence northerly thirty-four feet five inches. While it appears from the survey that the walls of the building are in substantial accord with the description given in the deed to Cohn and in his mortgage back it does not appear that the walls are partition walls beyond the thirty-two feet and eight inches from Broadway; and consequently, we are without record evidence showing that the walls surrounding the gore in dispute are partition walls. It is true that the plaintiff's attorney Huberty in his affidavit describes the lines between the lots of Batterman and his wife as running through partition walls, but he gives no facts upon which we can determine whether they were constructed pursuant to any agreement between the parties or that they have ever been mutually used by them as such party walls.

In conveying the premises to William Batterman by his mother it appears, as we have seen, that his father, John F. Batterman, joined in the deed. Of course he had the power to convey away a part or the whole of his building if he saw fit and so intended. The fact that the father still continued in the possession of the building is not necessarily conclusive upon the question that he was holding adversely. It is not contended that he held adversely as to his wife, who was living with him, and it may be that he held over after the conveyance to his son, with the son's license or as his tenant, in either of which

cases the adverse possession would not begin to run as against the son. It is quite possible that neither party understood or knew that the walls of the building encroached upon the lands of Mrs. Batterman, and it is true that upwards of twenty years have elapsed since the son obtained his deed, but we have no evidence here bearing upon the question other than the situation of the gore back from the street inclosed in the walls of the building and only accessible through the building itself; but the son is alive, still the record owner of the premises in controversy, and he, while conceding that the walls were constructed in 1875, refuses to quitclaim his interest therein. We, therefore, are of the opinion that the determination of the validity of the title is dependent upon oral testimony, that it is not free from doubt and that, under the circumstances, we should not compel the purchaser to take the title. (*Heller* v. *Cohen*, 154 N. Y. 299.)

After the conveyance to Cohn it appears that he conveyed the premises to Charles Katz, who in turn conveyed to one Lesinsky; but in the conveyance to Lesinsky he excepts and reserves therefrom the gore in question, specifically describing it by metes and bounds. Lesinsky having died, his executors reconveyed the premises to Katz with the same reservation, and Katz again conveyed the premises to Maurice Rosier, but with the same reservation. It thus appears that, under the plaintiff's title, the gore in question now vests in Katz and that he was not made a party to the foreclosure action. The Special Term was of the opinion that the gore excepted by Katz from the description in his deed was inseparable from the grant and inaccessible save through that which was granted and conveyed by him; that it was inconsistent with the grant which was covered in its entirety by the three-story brick building which, together with the land on which it stood, had been conveyed by him; but Katz, being the subsequent record owner of the gore, was a proper party and had the right to be heard upon the question.

We think that the order made upon the purchaser's motion should be reversed and that her motion should be granted, with costs in all courts.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur.

Order reversed, etc.