In the Matter of the Application of WILLIAM BREITENBACH, Petitioner, Respondent, against WILLIAM J. HEFFERNAN and Others, Board of Elections, County Board of Canvassers of County of Kings, Respondents; JOHN J. McCUSKER, Appellant, and JOHN SPIEZIO, Rival Candidate, for an Order Directing a New Primary Election or the Examination and Preservation of the Ballots Cast in the Fifty-first Aldermanic District, Kings County, New York City, at the Primary Election Held on September 17, 1935.

Second Department, October 23, 1935.

*Charles Treibich*, for the appellant.

*Abraham A. Berry*, for the petitioner, respondent.

*H. Boardman Epstein*, Assistant Corporation Counsel [*Paul Windels, Corporation Counsel*], for the respondents.

HAGARTY, J. The Election Law (§ 330) provides:

"The supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to * * *

"2. The nomination of any candidate * * * in a proceeding instituted by any candidate aggrieved * * *; and the court may direct * * * the holding of a new primary election where a * * * primary election has been characterized by such frauds or irregularities as to render impossible a determination as to who rightfully was nominated or elected, but a proceeding under this subdivision relating to a primary election must be instituted within ten days of such primary election."

Within the prescribed time, the petitioner moved for an order directing the holding of a new primary election, and, further, under subdivision 4 of the same section, for a recanvass of the protested, wholly blank or void ballots shown upon the statement of the canvass. On that application, the court granted petitioner's motion to the extent of permitting an examination and inspection of the protested, void and blank ballots. The order made thereon, and entered on the motion of the petitioner, permitted an inspection of the protested, void and blank ballots and purported to retain jurisdiction of the petitioner's further prayer for relief pending the outcome of the examination ordered.

Subsequently, petitioner moved for an order permitting him to examine all the ballots cast at the primary election. That motion resulted in the order under review, entered on the 17th day of October, 1935, which permits an examination, inspection and recanvass of all the ballots cast and directs that the protested, void and blank ballots which have been commingled with the valid ballots be segregated. This order also provides that the court should retain jurisdiction and defer final disposition of that part of petitioner's original motion wherein he asked that the court order a new primary election.

On both applications, the orders were entered on the motion of the petitioner, and neither provides for the holding of a new primary

election, which is the only relief which the court may ultimately grant under the statute.

We are of opinion that, resolving all inferences in favor of the petitioner for the purpose of this decision, it is now too late for the court to grant the relief which the petitioner seeks, necessarily involving a further application for the holding of a new election after the recanvass, by reason of the short time between now and election day. The provision of the statute quoted for the institution of a proceeding relating to a new primary election within ten days of such primary election was adopted for the purpose of having the rights of the parties under the statute determined at a time when the proceeding would not interfere with the preliminary requirements of a general election. Such time does not remain, and it is clear that if the court should ultimately determine that irregularities characterized the original primary election, it would be impossible to conduct a new primary election in time to have the successful candidate's name appear on the ballot on election day.

The board of elections should make effective the provision of the Election Law requiring election officials to segregate the void, protested and blank ballots and compel the placing of such ballots in the proper containers provided therefor, so that litigation of this character may be avoided in the future.

The order must be reversed on the law and the facts, motion denied and proceeding dismissed, without costs.

JOHNSTON, J., concurs on the grounds stated in opinions by HAGARTY and CARSWELL, JJ.

DAVIS, J. (concurring with HAGARTY, J.). The petitioner was a candidate for the nomination for the office of alderman from the fifty-first aldermanic district of the thirteenth Assembly district, borough of Brooklyn, on the Democratic ticket. The opposing candidate received a majority of seventy-four as disclosed by the election officers after the count had been made. In the twenty-three election districts in the aldermanic district there were more than 1,000 ballots returned as void, blank or protested. Many ballots were protested by the watchers of the petitioner as invalid for various reasons. In many districts the election officers declined to mark for identification these protested ballots. Likewise they neglected and refused in many districts to segregate these blank, void and protested ballots and place them in separate envelopes as the law prescribes. (Election Law, § 226.) Instead, they placed these ballots, to the number of 800 or more, in the boxes so that they were commingled with the valid ballots. It is charged

that this action on their part was deliberate in the interest of the successful candidate, so that there could be no recanvass made under the provisions of section 330 of the Election Law; and that they were advised to take that course and ignore the protests of the watchers of petitioner, in some instances by the Special Deputy Attorney-General who was present and supporting the successful candidate. There are many other illegal acts and irregularities charged, but I mention only those affecting the count.

The charges of deliberate fraud and failure to observe the provisions of law are not entirely tangible, but depend upon the inferences drawn from circumstances. Likewise, the number of ballots declared void or marked illegally and protested is not given with sufficient clarity so that it could be said that if these were rejected it would change the result, even though it were now possible to examine and canvass them. I think that if the action by the inspectors was taken through ignorance of the law, it would constitute such legal fraud and irregularity as to justify the court in ordering a new primary election. The right of a candidate to have a legal count can be no more flouted by a defiance of law through ignorance than it may through deliberate fraud. The election officers take an oath and are bound to observe the law in all their acts, to the end that voters may fairly make their choice and have that choice recognized and recorded in the count.

The petitioner has no definite legal theory as to the manner in which a recanvass of the votes may be made. The only way that is suggested is that, as the examination of all the ballots proceeds and the void and protested ballots loose in the boxes are segregated, there may be an informal count of the valid ballots contained in the boxes. There is no legal basis for such procedure. If an attempt should be made to segregate the void and protested ballots now, it would be difficult to determine whether or not some of them were counted as valid without protest following the close of the election. It presents a situation unfortunate for the petitioner, who has, I believe, a genuine grievance. I agree that it is now too late to direct the holding of a primary election; and the right to different relief is not clear under the statute and the facts presented in the record. Therefore, for the reasons stated, I vote for reversal and denial of the motion.

CARSWELL, J., votes to reverse with the following memorandum: The moving papers do not establish that any commingling of protested, void and blank ballots with valid ballots has affected the result. There is no affidavit showing in a concrete manner that any specified number of alleged invalid ballots among those

thus commingled were improperly counted, although affiants were available to make such detailed affidavits if, in truth and in fact, any such improper counting occurred in an amount affecting the result. (*Matter of Schwartz* v. *Heffernan,* 240 App. Div. 851.) The failure of petitioner to make such a *prima facie* showing establishes that he does not have a genuine grievance entitling him to judicial action.

JOHNSTON, J., concurs on the grounds stated in opinions by HAGARTY and CARSWELL, JJ.

Present — HAGARTY, CARSWELL, DAVIS and JOHNSTON, JJ.

Order granting petitioner's motion for an examination, inspection and recanvass of all the ballots cast at the Democratic primary election for the office of Democratic candidate for alderman of the fifty-first aldermanic district of the thirteenth Assembly district of the county of Kings and directing the board of elections to produce all records of the aforesaid election reversed on the law and the facts, motion denied and proceeding dismissed, without costs.